**BOREN et al. v. YOUNG et al.    (No. 1263.)**

(Court of Civil Appeals of Texas.    Beaumont.
June 10, 1925.)

1. Mines and minerals ⊖➾74—Promise of assignee of lease to pay assignor expense of acquiring leases on reassignment to third party held supported by consideration.

Where plaintiffs, who owned the beneficial interest in leases acquired by them in the name of defendant as trustee, assigned them to such trustee as owner in consideration of his promise to pay to plaintiffs on a reassignment of the lease to a third party the expense incurred

by plaintiffs in procuring the leases, the promise to pay *held* supported by a consideration.

2. Mines and minerals ⊖➾99(3)—Jury's finding of knowledge of limitation of authority of partner to make certain contract held without evidentiary support.

Jury's finding of plaintiff's knowledge of the limitation of authority of partner as agent of defendant partnership to make a certain contract, by which he, as such agent, had transferred to him certain oil and gas leases, *held* without evidentiary support.

3. Partnership ⊖➾160 — Parties, contracting with executive head of partnership on subject as to which he had apparent authority to act, held not bound by unknown limitation of authority.

Parties, contracting with executive head of partnership on a subject as to which he had apparent authority to act, *held* not bound by unknown limitation of his authority pertaining to such contract.

Appeal from District Court, Henderson County; Ben F. Dent, Judge.

Suit by O. M. Boren and another against Joe E. Young and others, as copartners. Judgment for defendants, and plaintiffs appeal. Reversed and rendered.

Bulloch, Ramey & Storey, of Tyler, and Miller & Miller, of Athens, for appellants.

W. D. Justice and Sam Holland, both of Athens, for appellees.

WALKER, J.   The appellees in this case were sued by appellants as partners under the firm name of Citizens' Oil & Gas Company of LaRue, Texas.   The facts show that they were landowners in Henderson county, Tex., and organized this partnership for the purpose of having their lands developed for oil. After the organization of the partnership, the partners selected one of their number, to wit Joe E. Young, to deal with appellants for the purpose of having their lands developed for oil.   Under due authority from his copartners, Young entered into the following contract with appellants, O. M. Boren and A. D. McMinn:

"State of Texas, County of Smith.

*This memorandum of agreement made and entered into on the date hereto subscribed by and between Joe E. Young, trustee, hereinafter called party of the first part, and O M. Boren and A. D. McMinn, hereinafter called party of the second part, witnesseth:

"That whereas, party of the first part is desirous of having a deep test well sunk on certain lands in the territory known as LaRue territory; and

"Whereas, said party of the first part has agreed to undertake to secure leases on a block of land of not less than 10,000 acres, to be blocked as near solid as it is possible to do so, and said party of the first part, fully realizing that the land in the above said territory at

this time has no value as oil and gas land, but is considered as wild-cat territory:

"Now, therefore, in consideration of the delivery to the party of the first part by the party of the second part, of the hereinafter described contract, within thirty days from the date the party of the second part is advised that said leases are ready for delivery, and the further consideration of $5 cash in hand paid the party of the first part by the party of the second part, the receipt of which is hereby acknowledged and confessed to be actually paid. The said party of the first part hereby agrees and binds himself that he will accept and hold in trust for the party of the second part or his assigns, all leases covering said land, and to devote all time and efforts necessary to obtain such leases, or having same obtained in the shortest time possible from this date, said leases to be taken on the regular Texas 'Producers 88' form of lease blank, and to be for the usual term of five years from date thereof, to be for not less than $1 consideration for each lease taken, to be taken in the name of Joe E. Young, trustee (acting as trustee for the party of the second part, or his assigns), leases shall also provide for $100 for gas produced and sold from each well, same to be paid lessor each year, said leases to further provide for the lessor to retain the usual ⅛ royalty, said leases to further provide that a well shall be begun within twelve months from date thereof, on such location as lessee shall select, and that the drilling of said well is sufficient consideration to the lessor, together with the $1 cash paid on execution of same, so long as well is being drilled with due diligence, on some part of said block.

"In consideration of the above agreements by the party of the first part, the said party of the second part hereby agrees and binds themselves that they will within 30 days from the date they are advised that said above-described leases are ready for delivery, turn over to the party of the first part a bona fide contract, signed by parties who are well able to carry out all provisions of said contract as hereinafter described, and said party of the first part shall have the privilege of investigating the financial ability of said parties signing said contract, said contract to provide as follows, to wit:

"Parties signing contract pledges and contract that they or their assigns will begin operations for drilling a deep test well for oil and gas on said block of land covered by said leases, the site or location of said well to be determined by them or their assigns, at the earliest practicable date. But under no circumstances shall such work be delayed longer than twelve months from date of said contract, such drilling to be prosecuted with due diligence until said well has reached a total depth of 3,500 feet, unless oil or gas is found in paying quantities at a lesser depth, and to provide further that if salt water is encountered in such quantities as to effectually destroy the hope of success by continuing said well, then and in that event it shall be held as the fulfillment of the said contract, however they shall have the right under said contract to begin and complete a second, if the first well shall fail, and all the conditions of said contract touching first well shall be held to obtain in and cover the second well.

"They will further agree that if oil is found of high gravity grade to the extent of 100 barrels per day, or of low gravity grade to the extent of 250 barrels per day, that earnest and faithful diligence shall be shown in the rapid development of said block of land covered by said leases, by drilling of other wells as rapidly as practicable, and 90 days after such well is brought in to pay the lessors of said leases the sum of $1 per acre per year, until such time as their land can be drilled as stated above.

"Now in consideration of the above agreements of the party of the first part, the party of the second part has this day posted with Citizens' State Bank a deposit of $250, to be used as a forfeit to show good faith by the party of the second part, to the end that said party of the second part will and can carry out their part of this contract, this deposit is to be held in trust by said bank until such time as said party of the second part shall deliver to it the herein described contract within the period of time as hereinbefore stated, and when said party of second part shall have delivered said contract within the said period of time, then the said bank shall return the said deposit to said party of the second part.

"The party of the second part further agrees that they will pay all reasonable expense incurred in securing said leases, providing that the total acreage is not less than 10,000 acres, and providing that said block of acreage is grouped in as close block as could reasonably be expected.

"Witness the hands of said parties this 14th day of January. A. D. 1920.

"Original leases to be returned to Joe Young, trustee, after being recorded and inspected by party signing contract. The said Young, or his assigns, shall be privileged to have inspection of drilling operations at all times. After well is abandoned, leases shall be assigned over to said Young, if no other well be started.

"O. M. Boren,

"A. D. McMinn,

"Parties of the Second Part.

"J E. Young,

"Party of the First Part.

"Witness: T. Glenn."

Through the efforts of appellants, more than 10,000 acres of land were leased under the provisions of this contract in the name of Joe E. Young, trustee for appellants, at an actual cost to appellants, by way of necessary expenses, etc., of the sum of $545.80. The leases, after being duly executed and recorded, were delivered to appellants, who immediately sought to make the contract for the development of the land as called for in their contract with appellees. While these negotiations were pending between appellants and the parties with whom they were trying to contract, appellees sought a return to them of the leases held by appellants, that they themselves might make a contract for the development of the leased lands. After some correspondence with the secretary and president of the copartnership, appellants shipped them the leases by express to be delivered upon the execution by them of the following

contract, which was duly executed on behalf of the copartnership by Joe E. Young, as trustee, as indicated:

"May 2, 1920.

"Received of O. M. Boren and A. D. McMinn 91 leases covering 10,194 acres of land situated in the S. E. portion of Henderson county, Tex., said leases all being in the name of Joe Young, trustee, as lessee, and all being-recorded in the office of the county clerk of Henderson county, Tex.

"This is to further acknowledge that said O. M. Boren and A. D. McMinn have paid all expenses necessary in obtaining said leases and recording same, which amount totals $545.80, irrespective of any remuneration for their personal time they devoted to obtaining said leases, as per itemized list of said expenses rendered by said O. M. Boren and A. D. McMinn.

"If at any time during the life of said leases, I transfer, assign or dispose of any or all of said leases, for the purpose of having said land covered by said leases, developed for oil or gas, or any other purpose whatsoever, I hereby agree to reimburse said O. M. Boren and A. D. McMinn to the extent of the actual expenses incurred in obtaining said leases, $545.80, said amount to be paid to said O. M. Boren and A. D. McMinn when any part of said leases are transferred, assigned or disposed of.

"It is understood and agreed that said O. M. Boren and A. D. McMinn shall from this date have no control of said leases, or any interest in same of any kind, except their interest of $545.80, as stated above.

"J. E. Young, Trustee."

Appellees made a transfer of the leases to a third party, within the meaning of this contract, and within the time stipulated therein, but refused, upon due demand, to pay appellants the said sum of $545.80. Thereupon, appellants brought this suit for the recovery of that sum. Appellees answered that the contract was executed by Joe E. Young without authority from his copartners; that appellants knew he had no such authority; and that the contract upon which the suit was based was without consideration. Upon a trial to a jury submitting these defenses, a verdict was returned in favor of appellees upon these issues, and judgment was entered thereon that appellants take nothing by their suit. The court refused to give appellants' requested instruction, that the jury return a verdict in their favor for the sum sued for. It should also be said that the sum of $250 forfeit money called for in the original contract was duly posted by appellants, but upon the execution of the last contract by Joe E. Young as trustee, and the surrender by appellants to appellees of the lease, the forfeit money was returned to appellants.

The appellees have filed no brief. Our statement of this case is therefore taken from the brief of appellants, as is our duty under the rules.

### Opinion.

[1] Appellants' motion for an instructed verdict should have been given. The leases in question were the property of appellees, though taken in the name of Joe E. Young, as trustee. Young was acting as trustee for appellants, and not for appellees, and while he held the legal title to the leases, it was in trust for appellants, who owned all the beneficial interest therein. There was no condition in the original contract between appellants and appellees executed on their part by Joe E. Young divesting this title out of appellants and investing it in appellees. True, appellants had contracted to secure a developing contract within 30 days, but the penalty for failure in that respect was covered by the $250 forfeit money, and not. by the forfeiture of the leases to appellees, nor by a transfer to appellees of the appellants' interest therein. Appellees could acquire these leases only by a purchase from appellants, who, in equity, owned all the beneficial interest therein. This they did by the contract of date May 2, 1920, and on the conditions therein expressed. Clearly, the verdict of the jury that this contract was without consideration is without any support whatever in the evidence, but, on the contrary, it was made to appear that a good and valid consideration was given by appellants for appellees' promise to pay the $545.80 on the condition stipulated in the contract, which consideration was the legal assignment to appellees of their equitable title to these leases.

[2, 3] As a member of the partnership, acting as its executive officer, Joe E. Young was its agent in executing the contract upon which this suit was based. After the execution of the contract, appellees permitted appellants to take down the $250 forfeit money which they had posted under the original contract. After the execution of their contract, appellees claimed to own all the leases, and under their claim assigned them to another party. The correspondence between appellants and appellees prior to the execution of this last contract was with the secretary and president of the copartnership, and the agreement resulting in the surrender of the leases was reached through this correspondence. These three members of the partnership, Joe E. Young, the secretary, and the president, were fully advised by this correspondence and by this contract of the conditions upon which these leases would be surrendered and appellants would convey their interest therein to appellees. With this information before them, appellees, through their trustee, executed the promise to pay the $545.80, and received and enjoyed the consideration received therefor.

There was no evidence under the statement made by appellants in their brief that they knew that Joe E. Young was acting beyond the agency given him by his copartners in executing this contract but, on the contrary, the inference arising from the statement made by them is that they knew of no such

limitation, but contracted in good faith with Joe E. Young, surrendering their property to him and investing in appellees the title thereto. It follows that the jury's finding that appellants knew of the limitation on the authority of Joe E. Young is without support. Hence, in law, he was the agent of his copartners, acting as their executive head, with authority to contract in their name; and since appellants had no knowledge of any limitation of Young's authority, the fact that he acted beyond the scope of his authority, if he did so act, which we doubt, would not be a bar to appellants' right to recover.

Under the statement made by appellants, the trial court should have instructed a verdict in their favor for the full amount sued for. It is, accordingly, our order that the judgment of the trial court be, and the same is hereby in all things reversed, and judgment rendered in favor of appellants for the relief sued for.